## Chenkus v. Bogert

*Anthony B. Panaway,* for plaintiffs.
*Thomas J. Sharkey,* for defendant.
*Enid W. Harris,* for additional defendants.

PODCASY, *J.,* October 3, 1983—This matter comes before the court on the additional defendants' preliminary objections in the nature of a demurrer to the complaint. The basis of the demurrer

stems from the additional defendants contention that a borough volunteer fire department under 42 Pa. C.S.A. §8541 is immune from liability. This section reads in part as follows:

"Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency. . . ."

The original complaint in this matter charges John Bogert, the original defendant, as the person whose conduct brought about the fire loss allegedly sustained by the plaintiffs. Bogert in turn joined the Borough of West Hazelton, a/k/a Borough of West Hazleton Fire Department, and West Hazleton Volunteer Fire Company, a/k/a West Hazleton Volunteer Fire Company No. 1, as additional defendants alleging that they failed to provide equipment adequate enough to speedily terminate the fire.

The additional defendants in asserting their immunity rely on Weitz v. Brighton Social Hall, 19 D.&C.3d 216 (1981). The court in Weitz relied on the holding of the Commonwealth Court in Lacey Park Volunteer Fire Company No. 1 v. Board of Supervisors of Warminster Township, 27 Pa. Commw. 54, 365 A.2d 880 (1976).

In this case the court only allowed the political subdivision to exercise its powers with respect to the fire-fighting activities of the volunteer fire department, and would not allow the political subdivision to exercise any degree of control over the activities of the volunteer fire department with respect to the assets, such as fire equipment and real estate, which it held in its capacity as a non-profit corporation.

The court went on to state that if it follows, as the defendant maintains, that a political subdivision's ability to control a volunteer fire department's fire-

fighting activities makes that fire department's fire-fighting activities acts in behalf of the political subdivision and thus within the meaning of the Political Subdivision Tort Claims Act, then it would also follow that a political subdivision's inability to control the activities of a volunteer fire department with respect to its nonprofit corportion assets makes such activities fall outside of the concept of acts in behalf of the political subdivision and thus outside of the immunity provisions of the Political Subdivision Tort Claims Act. Therefore, the court found the holding in Lacey to be supportive of its conclusions that the nature of the acitivity done by the volunteer fire department determines whether the Political Subdivision Tort Claims Act applies in a particular case.

Since the record in the instant case does not spell out the activities of the West Hazleton Volunteer Fire Company, we are at a loss to determine whether it is a governmental unit and thus covered by the immunity privileges of 42 Pa. C.S.A. §8541. For that purpose we will order depositions to be taken of the volunteer fire company. If those depositions indicate that the volunteer fire company is a government unity, then immunity will apply — otherwise, it will not.

We note that in paragraph 2 of the original defendant's complaint he admits that the Borough of West Hazleton, a/k/a the Borough of West Hazleton Fire Department, is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Thus immunity will apply to this entity, and it shall be dropped as a party to this suit in accordance with defendant's averment noted herein.

Accordingly, we enter the following

## ORDER

It is hereby ordered, adjudged and decreed that depositions are ordered forthwith in accordance with this opinion, and the complaint of the original defendant against the additional defendant, Borough of West Hazleton, a/k/a Borough of West Hazleton Fire Department is dimissed.

## OPINION

PODCASY, *J.*, March 16, 1984—We have before us the question whether an unincorporated association of volunteer firemen can be held liable for alleged acts of negligence in fighting a fire.

This is an action in trespass brought by Albert and Loretta Chenkus, plaintiffs, owners of certain rental real estate in West Hazleton Borough, against their tenant, John Bogert, defendant, in which plaintiffs seek to recover damages for Bogert's alleged negligence in causing a fire to originate in his apartment on plaintiffs' property on April 25, 1982.

Bogert, the original defendant, filed a complaint against the Borough of West Hazleton and the West Hazleton Volunteer Fire Company as additional defendants, alleging acts of negligence in the manner in which the fire fighting was done after the fire had broken out. Demurrers were filed on behalf of both additional defendants, claiming governmental immunity from suit. The demurrer filed on behalf of the borough was sustained by order of court entered October 3, 1983, at which time depositions were ordered in reference to the nature of the activities of the West Hazleton Volunteer Fire Company. A deposition on this issue has been taken and filed of record, and we now have before us the question of proper disposition of the demurrer filed on behalf of the Volunteer Fire Company.

The deposition taken is that of Robert James Ward, fire chief of the Borough of West Hazleton. Ward testified that he was a full-time paid employee of the borough, subject to supervision of Thomas Mistal, a member of the West Hazleton Borough Council and its duly appointed Fire Commissioner. Ward stated that he was one of only three full-time paid employees of the West Hazleton Fire Department, that the Department consisted of himself as chief, plus two full-time paid drivers, plus nine other part-time paid drivers, plus about 27 active unpaid volunteer members of the force, and that all members of the department, paid and unpaid were members of the West Hazleton Volunteer Fire Company. He went on to state that all fire equipment was owned by the borough, and that the volunteer firemen, once at the scene of a fire and within the designated "fire-ground", were under his supervision as fire chief.

Ward noted that the Volunteer Fire Company itself was an association separate and apart from the borough council, and that it held its own meetings, elected its own officers, had its own charter and by-laws, did its own fund raising, and governed its own expenditures. He added that, when responding to fire alarms and when fighting fires, the paid borough employees and the volunteers responded as a unit, pursuant to standard written operating procedures prepared by him as fire chief and approved by Thomas Mistal, the borough's duly appointed fire commissioner, and that it was his responsibility, as fire chief, to supervise and manage all fire fighting activity in the borough. He then went on to state that, although the Volunteer Fire Company governed its own business affairs, it was under the supervision of the borough "if it comes down to a fire situation", noting that the borough provided work-

men's compensation coverage for the volunteers engaged in fire fighting.

On cross examination in reference to the existence of any specific ordinance or resolution of the borough making the Volunteer Fire Company subject to its control in fire fighting situations, Ward stated that the only document of which he had personal knowledge was a directive applicable to all fire fighting personnel which had been handed down in 1974 or 1975 by a former Fire Commissioner who at the same time had been president of the borough council. When pressed on this subject, he indicated that, although he did not recall the stated capacity in which the directive had been signed, he did recall that it was on borough stationery, and that it provided that the fire chief appointed by the borough council was to have supervision of all activities of the fire department and of the volunteer firemen in matters relating to fire fighting.

Ward testified that the Volunteer Fire Company and the Fire Department both had their base of operation in the borough building. He stated that, in responding to fire alarms, most of the volunteer firemen would go to the scene of the fire in their own personal vehicles, that, once on the scene, they would await directions from him or his deputy as to what action to take, and that he and his deputy would be assisted by the Volunteer Fire Company's fire line officers "in running a fire ground situation", with overall command being vested in him or his deputy at a "command post" or "command site" on or near the premises. He referred to the volunteer firemen as his "fire fighting force", pointing out that, in instances of a change in the behavior of the fire or in the stability of the burning structure, his volunteer line officer assistants had the authority, to change their tactics on the spot, without referring

back to the command post, based on training which they had received, subject always to overall control by him or his deputy. Finally, he noted that the only paid personnel were the equipment drivers, and that the actual fire fighting was done entirely by the volunteers.

On further cross examination, Ward stated that, although neither he nor the borough council had any authority to order a volunteer fireman to attend a fire, he did have authority to remove from the scene any volunteer who refused to follow his directions once there, and that all volunteer firemen had, as a standing practice, taken an oath to respond to fires whenever possible. Ward added that, if a volunteer fireman on the scene of the fire refused to follow his directives in reference to control of the fire, he had authority not only to remove the offending fireman from the scene but also to refer the matter to a review board composed of himself, sitting as fire chief of the Borough of West Hazleton, and the fire line officers of the Volunteer Fire Company for such further disciplinary action as might be considered appropriate.

Ward explained that, although the Volunteer Fire Company had its own organizational bylaws, all volunteer firemen adhered to the manual of standard operating procedures which he had prepared as borough fire chief, and which had been approved by the borough fire commissioner. Ward went on to state that as borough fire chief he had statutory authority to control the area in which the fire fighting was taking place and to direct the arrest and removal of any person he wished removed from the scene. He stated that although neither he nor the borough council had authority to physically interfere with any member of the force, paid or volunteer, leaving the fire scene, a paid full-time driver who left the

scene without proper authorization could be disciplined by the borough council, pursuant to all civil service regulations, and a volunteer fire fighter who similarly left the scene could be disciplined by the review board on which he, as borough fire chief, sat as a member, after which the borough council, acting entirely on its own, could, if it saw fit to do so, recommend to the Volunteer Fire Company that the offending individual be denied participation in any future fire fighting activities. When questioned as to what recourse the borough would have if the Volunteer Fire Company refused to follow such a recommendation, he stated that they could, in such an extremely unlikely hypothetical situation, disband the Volunteer Fire Company and prohibit its members from fighting fires within West Hazleton Borough. Lacey Park Volunteer Fire Company No. 1 v. Board of Supervisors of Warminster Township, 27 Pa. Commw. 54, 365 A.2d 880 (1976); Weitz v. Brighton Township Fireman's Social Hall, 19 D.&C.3d 216 (1981).

Under the circumstances, try as we may, we see no basis on which we can permit the proceedings against the Volunteer Fire Company to continue. The control of fires is a classic example of a matter in which the general police powers of the borough council must predominate. Fire Chief Ward's testimony makes it crystal clear that it is he, as a duly appointed official of the West Hazleton Borough Council, who has the authority to direct fire fighting activities at the scene of a fire, that appropriate disciplinary action can be taken by him, by removing an insubordinate volunteer fire fighter from the scene, and that, if this is not sufficient, further disciplinary action can be taken by him, with the cooperation of the Volunteer Fire Company's review board, or by the borough council, in the event of a

refusal of the Volunteer Fire Company to extend its reasonable cooperation.

All of the alleged acts of negligence set forth on paragraph nine of defendant Bogert's complaint against the Volunteer Fire Company as additional defendant involve the manner in which fire fighting activities were conducted, and have nothing whatever to do with other Fire Company activities which neither the borough council nor the fire chief control or attempt to control. When conducting fire fighting activities, the volunteer firemen are under the fire chief's control and are provided with workmen's compensation coverage by the borough. They are, during the conduct of such fire fighting activities, acting as unpaid servant-employees of the borough, subject to control by a duly appointed borough officer. They have all taken an oath to respond to fire calls whenever possible and, if they as a group failed to abide by this oath, the borough would, of necessity, have to disband the Volunteer Fire Company and either hire a complete fire fighting force or make arrangements with the fire department of adajcent municipalities to handle fire fighting within the borough. The fact that the subordinate volunteer line officers were given the authority to act on their own in the event of a change in fire behavior or structure stability does not alter the fact that in so doing they were acting in accordance with the directives of the borough fire chief. As in military service, any combat line officer must have authority to use his discretion in reference to the details of carrying out his orders, for sudden changes in front line conditions cannot be foreseen or provided for by an officer in overall command operating from a command post located some distance away from the scene of actual combat.

Paragraph three of defendant's complaint clearly identifies the additional defendant Volunteer Fire Company as "an unincorporated non-profit association," and, as defendant's counsel, in his argument brief, correctly points out, the protection of governmental immunity is expressly extended by statute to volunteer firemen. Inasmuch as the West Hazleton Volunteer Fire Company is an unincorporated association rather than a non-profit corporation, a judgment against the Company would impose personal liability on the members of the association. This cannot be done, for such an imposition of personal liability on volunteer firemen is expressly prohibited by Subchapter C of Chapter 85 of the Judicial Code, 42 Pa. C.S.A. §8541 et seq.

Our order is attached hereto.

## ORDER

Now, this March 16, 1984, at 9:30 a.m., it is hereby ordered, adjudged and decreed as follows:

(1) the complaint of the original defendant against the additional defendant, West Hazleton Volunteer Fire Company, a/k/a West Hazleton Volunteer Fire Company No. 1, is dismissed; and

(2) the Prothonotary of Luzerne County is directed to mail notice of entry of this order to all counsel of record pursuant to Pa.R.C.P. 236.